UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.: CV 11-10066 SJO (PJWx)     DATE: July 10, 2012

TITLE: Thomas Antonio, et al. v. Saxon Mortgage Services, Inc.

========================================================================
PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                         Not Present
Courtroom Clerk                          Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**      **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                              Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** [Docket No. 15]; **ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** [Docket No. 13]

The matter is before the Court on Defendant Saxon Mortgage Services' ("Defendant") Motion to Dismiss ("MTD"), filed on March 22, 2012. Plaintiffs Thomas and Elda Antonio (collectively, "Plaintiffs") filed an Opposition ("MTD Opp'n") on April 2, 2012, to which Defendant filed a Reply ("MTD Reply") on April 9, 2012. On March 19, 2012, Plaintiffs filed a Motion for Class Certification ("MCC"). Defendant filed an Opposition ("MCC Opp'n") on March 26, 2012, to which Plaintiffs filed a Reply ("MCC Reply") on April 2, 2012. On the same day, Plaintiffs also filed a Request for Judicial Notice ("RJN"), which the Court **DENIES**. The Court found these matters suitable for disposition without oral argument and vacated the hearing set for April 23, 2012. *See* Fed. R. Civ. P. 78(b). For the following reasons, the MTD is **GRANTED IN PART** and **DENIED IN PART** and the MCC is **DENIED**.

I.    FACTUAL AND PROCEDURAL BACKGROUND

On February 29, 2012, Plaintiffs filed their First Amended Complaint ("FAC") in which they allege that Defendant "knowingly, and without justification imposed excessive monthly escrow contribution requirements on Plaintiffs and the putative Class members." (FAC ¶ 2, ECF No. 11.) Plaintiffs' FAC sets forth the following allegations. In 2003, Plaintiffs obtained a home loan from First Franklin Financial Corporation ("First Franklin"). (FAC ¶ 9.) As part of their mortgage, Plaintiffs agreed to contribute funds to an escrow impound account on a monthly basis. (FAC ¶ 10.) The agreement between Plaintiffs and First Franklin provides in relevant part:

> An impound account is an account established to ensure that required payments are made for certain items associated with a mortgage loan, such as taxes and insurance. The borrower pays the [l]ender 1/12th of the estimated annual cost of these items monthly along with its regular monthly payment of principal and interest. The [l]ender keeps

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 11-10066 SJO (PJWx)  **DATE:** July 10, 2012

these funds in the impound account and then pays the appropriate party before the due date.

(FAC ¶ 10.) First Franklin hires loan servicers like Defendant to collect payments and service loans, and Defendant began servicing Plaintiffs' loan in 2007. (FAC ¶¶ 11-12.) Plaintiffs allege that they and the Class they purportedly represent "are the intended third-party beneficiaries of the servicing contract between Defendant and First Franklin." (FAC ¶ 16.) As part of its servicing functions, Defendant determined projected premiums that would be paid in the future with funds from Plaintiffs' impound account. (FAC ¶ 19.)

Plaintiffs allege that from September 2007 to September 2008, Defendant's projections were consistent with past insurance premiums, with an annual increase that did not exceed forty dollars. (FAC ¶ 20.) However, in or around June 2009, Defendant's insurance projections spiked significantly, from $845 to $2603, or approximately 200% over the prior period. (FAC ¶ 21.) Contrary to Defendant's projections, however, Plaintiffs' actual homeowner's insurance policy premium increased by only thirty-three dollars. (FAC ¶ 23.) Plaintiffs allege that Defendant's increased estimations "forced [them] to pay approximately $141.00 per month more than was actually necessary." (FAC ¶ 24.) Plaintiffs allege that there was no justification for the substantial increase because (1) there were no significant changes to their home or surrounding neighborhood, (2) there was no change in the Consumer Price Index, and (3) there was no deficiency in their escrow account. (FAC ¶¶ 25-26.)

Plaintiffs contested the excessive escrow payment, but obtained no relief from Defendant. (FAC ¶ 28.) Thereafter, Plaintiffs procured a cheaper homeowners insurance policy. (FAC ¶ 29.) However, Plaintiffs' change made no difference to Defendant's increased projection; Defendant continued to collect excess impound contributions. (FAC ¶ 30.) By April 2010, Plaintiffs' mortgage servicing had been transferred to Ocwen Loan Servicing, LLC ("Ocwen"). (FAC ¶ 31.) Ocwen refunded approximately $937.00 to Plaintiffs, a sum which Plaintiffs allege "represent[s] only a portion of the overcharged funds being held in their impound account." (FAC ¶ 32.) Plaintiffs allege that "[n]either Ocwen nor Defendant has refunded the entire amount of excessive payments for the September 2009 through September 2010 insurance period." (FAC ¶ 33.)

Plaintiffs' mortgage loan is governed by the Real Estate Settlement Procedures Act ("RESPA"). (FAC ¶ 17.) Regulation X - a regulation promulgated pursuant to RESPA - caps the amount the lender can charge the borrower at one-twelfth the total annual escrow payments plus a cushion no greater than one-sixth of the same amount. (FAC ¶ 35.) Plaintiffs contend that "Defendant violated RESPA and Regulation X by imposing and collecting escrow payments from Plaintiffs and the Class in excess of the permitted amounts." (FAC ¶ 38.)

The FAC states the following causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) tortious interference with contract; (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code 17200, *et. seq.*; (5) violation

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 11-10066 SJO (PJWx)          DATE:  July 10, 2012

of the Consumer Legal Remedies Act[1] ("CLRA"); (6) conversion; (7) fraudulent and negligent misrepresentation; (8) restitution/unjust enrichment; (9) breach of contract in the alternative to tortious interference with contract; (10) breach of the implied covenant of good faith and fair dealing in the alternative to tortious interference with contract; and (11) breach of fiduciary duty. (*See generally* FAC.)  Plaintiffs seek to certify the Class for all causes of action.  (*See generally* FAC.)

II.     DISCUSSION

    A.     Legal Standard for Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003).  When evaluating a motion to dismiss, a court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  Dismissal is proper if the complaint lacks a "cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  If a court dismisses a complaint for failure to state a claim, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "A district court does not err in denying leave to amend where the amendment would be futile." *Id.*  (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990).

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P 8(a)(2); *see Ileto*, 349 F.3d at 1200.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  To plead sufficiently, a plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

---

[1] Plaintiffs originally asserted a claim for violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1770(a)(14).  (FAC ¶ 82.)  However, Plaintiffs subsequently withdrew that claim for unexplained reasons.  (MTD Opp'n 5, ECF No. 17.)  No discussion is warranted as to whether this claim would survive a motion to dismiss.  The Court declines defense counsel's invitation to consider imposing sanctions on Plaintiffs' counsel for the belated withdrawal of Plaintiffs' fifth cause of action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 11-10066 SJO (PJWx)          DATE:  July 10, 2012

1. Plaintiffs' First and Second Causes of Action

Plaintiffs allege breach of contract in their first cause of action.  (FAC ¶ 50.)  Plaintiffs contend that Defendant "entered into a contract for servicing rights with Plaintiffs' and the Class's mortgage compan[y]," which Defendant breached when it "overcharg[ed] Plaintiffs and the Class for escrow account payments."  (FAC ¶¶ 47, 50.)  Plaintiffs' second cause of action alleges breach of the implied covenant of good faith and fair dealing.  (FAC ¶ 58.)  Plaintiffs contend that Defendant's (1) overcharging Plaintiffs for their escrow accounts payments, (2) withholding of the overcharged funds, and (3) failure to provide full refunds of overcharged monies constituted a breach of the implied covenant of good faith and fair dealing.  (FAC ¶ 58.)

The Court addresses these causes of action together because they rest on the same premise: "Plaintiffs and the Class are the intended third-party beneficiaries to valid contracts for servicing rights between Defendant and . . . First Franklin. . . ."  (FAC ¶ 49; *see* FAC ¶ 55.)  In both instances, the Court finds that Plaintiffs fail to state a claim that is plausible on its face.

California Civil Code section 1559 provides, "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  Cal. Civ. Code § 1559.  "A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that third party and such intent appears on the terms of the contract."  *Jones v. Aetna Cas. & Sur. Co.*, 26 Cal. App. 4th 1717, 1724 (1994) (holding that plaintiffs had no standing to sue insurer as third-party beneficiaries where plaintiffs were only incidental rather than intended beneficiaries).

Plaintiffs' claim that Defendant and First Franklin entered into the Pooling and Servicing Agreement ("Agreement") with the express intent of benefitting Plaintiffs, and that the terms of the Agreement manifest such intent, comes up short.  Plaintiffs allege that Defendant knew that its services would be used by persons such as Plaintiffs and the Class in making their mortgage payments.  (FAC ¶ 48.)  But knowledge that the Agreement may inure to Plaintiffs' benefit is not the same as Defendant contracting with the intent to benefit Plaintiffs.  *Jones* unambiguously requires Plaintiffs to show intent to benefit **on the face** of the Agreement.  *See id.*  However, Plaintiffs' FAC fails to make this showing.  It does not mention any part of the Agreement that shows that First Franklin and Defendant contemplated and intended expressly to benefit Plaintiffs and the Class.  Instead, Plaintiffs' FAC and MTD Opposition rest on a bare Defendant-must-have-intended argument, which is bald speculation lacking the heft *Twombly* requires to push the first and second causes of action across the plausibility line.  "Rule 8 marks a . . . generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than [speculation]."  *Iqbal*, 556 U.S. at 678-79.

Therefore, The FAC does not establish that Plaintiffs were third-party beneficiaries to the Agreement.  With this premise removed, Plaintiffs cannot state a claim for either breach of contract

CASE NO.: CV 11-10066 SJO (PJWx)          DATE: July 10, 2012

or breach of the implied covenant of good faith and fair dealing. In their MTD Opposition, Plaintiffs give no indication that a second amendment could cure these defects.

  2. <u>Plaintiffs' Third Cause of Action</u>

Plaintiffs assert a claim for tortious interference with their mortgage contract with First Franklin. (FAC ¶¶ 61-64.) Plaintiffs allege that by overestimating their escrow account payments, "Defendant engaged in conduct which it knew was substantially certain to disrupt and/or interfere with the contractual relations . . . between Plaintiffs and First Franklin." (FAC ¶ 63.)

To plead a cause of action for tortious interference with contractual relations, a plaintiff must establish: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998).

Here, Plaintiffs allege that: (1) a valid mortgage agreement still exists between Plaintiffs and First Franklin, and pursuant to that agreement, First Franklin "may collect funds for escrow items that do not exceed the maximum amount a lender can require under RESPA" (FAC ¶¶ 10, 62); (2) Defendant knew of the existence of this contract (FAC ¶¶ 11, 63); (3) Defendant intentionally overcharged Plaintiffs' escrow account, and in doing so, engaged in conduct which it knew was substantially certain to disrupt and/or interfere with Plaintiffs' contractual relationship with First Franklin (FAC ¶ 63); (4) because Defendant overcharged Plaintiffs for their escrow payments, First Franklin breached its obligation to Plaintiffs under the mortgage contract by collecting escrow payments in excess of the 1/12th maximum that the mortgage agreement and RESPA impose (FAC ¶¶ 10, 62); and (5) consequently, Plaintiffs suffered damage by paying in excess of what RESPA allows for their insurance premiums. (FAC ¶ 65.) On these facts, the Court finds that Plaintiffs' FAC properly states a claim for tortious interference with contract.

  3. <u>Plaintiffs' Fourth Cause of Action</u>

Plaintiffs allege that Defendant's overestimation of the impound account payments violated California's Unfair Competition Law (UCL) because it violated both section 2609 of RESPA and section 3500.17(c) of Regulation X. (FAC ¶¶ 68-69.)

A private person has standing to sue under the UCL if that person "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 855 (2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 11-10066 SJO (PJWx)</u>     DATE: <u>July 10, 2012</u>

Defendant contends that Plaintiffs' conduct belies actual reliance on Defendant's insurance projections. (MTD 6, ECF No. 15.) As support for this contention, Defendant points to Plaintiffs' contesting of the excessive payments and procurement of a lower-priced insurance policy. (MTD 6.) Defendant's argument is unavailing. By pleading that they paid excessive monies into their escrow accounts because they believed Defendant's estimations were "correct and necessary" (FAC ¶¶ 74-75), Plaintiffs allege sufficient facts to support actual reliance. At the pleading stage, the Court accepts Plaintiffs' allegations as true and draws all reasonable inferences in Plaintiffs' favor. *See Iqbal*, 556 U.S. at 669.

Plaintiffs append to this cause of action a request for restitution of property and for a preliminary and permanent injunction. (FAC ¶ 76.) The Court finds the request for restitution proper. However, the FAC does not establish that Plaintiffs are entitled to injunctive relief. First, the servicing of Plaintiffs' mortgage loan has been transferred to Ocwen. (FAC ¶ 31.) Plaintiffs' request for injunctive relief is therefore moot because the entity that Plaintiffs allege caused them harm is not the entity that currently services Plaintiffs' account. Second, for an injunction to issue, there must be "a threat of continuing misconduct." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 463 (2005). "Injunctive relief has no application to wrongs which have been completed, absent a showing that past violations will probably recur." *People v. Toomey*, 157 Cal. App. 3d 1, 20 (1984) (citation omitted). Here, Plaintiffs' FAC discloses no such threat. The alleged wrong Plaintiffs seek to enjoin is one that has already occurred, and the FAC provides no plausible indication that it will recur.

Because Plaintiffs allege sufficient facts that plausibly demonstrate actual reliance on Defendant's representation, the Court finds that Plaintiffs' FAC states a claim for violation of the UCL. The Court also finds that Plaintiffs properly state a claim for restitution but not for injunctive relief.

    4.    <u>Plaintiffs' Sixth Cause of Action</u>

Plaintiffs assert a cause of action for conversion. (FAC ¶¶ 86-94.) Plaintiffs contend that "Defendant took Plaintiffs' and the Class's excess funds paid into the impound accounts and converted the excess funds to its own use." (FAC ¶ 91.) "A cause of action for conversion of money can be stated only where [the] defendant interferes with [the] plaintiff's *possessory interest* in a specific, identifiable sum, such as when a trustee or agent misappropriates the money entrusted to him." *Kim v. Westmoore Partners, Inc.*, 201 Cal. App. 4th 267, 284 (2011).

The monies at issue here were specifically set aside in Plaintiffs' escrow account for the sole purpose of paying Plaintiffs' insurance premiums. Plaintiffs allege that between September 2009 and September 2010, they paid approximately $1703.00 more than was actually necessary for their mortgage premium because of Defendant's over-projections. (FAC ¶ 24.) Plaintiffs further allege that Ocwen refunded only $937.35 of Plaintiffs' overpayment. (FAC ¶ 32.) It follows that

CASE NO.: CV 11-10066 SJO (PJWx)          DATE: July 10, 2012

Plaintiffs are still owed the amount of the overpayment that Defendant did not return.[2] Plaintiffs were entitled to the possession and use of this balance, and it is this un-reimbursed portion of their overpayment that Plaintiffs allege Defendant converted. (FAC ¶ 91.) Contrary to Defendant's contention, Plaintiffs do not make a "generalized claim for money." (*See* MTD 11.) Accordingly, Plaintiffs properly state a claim for conversion.

       5.      <u>Plaintiffs' Seventh Cause of Action</u>

Plaintiffs assert a claim for fraudulent and negligent misrepresentation. (FAC ¶¶ 96-101.) Fraudulent misrepresentation requires a showing that: "(1) the defendant represented to the plaintiffs that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff *reasonably relied on the representation*; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." *Manderville v. PCG&S Grp., Inc.*, 146 Cal. App. 4th 1486, 1498 (2007).

"Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986). Defendant argues that Plaintiffs' conduct following Defendant's alleged erroneous projection of Plaintiffs' premium was the opposite of reliance. (MTD 13.) Defendant cites Plaintiffs' contesting of the excessive escrow payments as an indication of no justifiable reliance. Defendant's argument fails for the same reason the Court articulated with respect to Plaintiffs' UCL claim. Accordingly, the Court finds that Plaintiffs sufficiently allege the elements of both fraudulent and negligent misrepresentation to survive a motion to dismiss.

---

[2] Plaintiffs' actual premium for September 2009 to September 2010 was $903.00. When the Court subtracts that amount from Defendant's projected premium of $2603.00 for that period, the Court arrives at an overpayment of $1700.00. A subtracting of Plaintiffs' alleged refund of $937.35 from the overpayment of $1700 reveals that Plaintiffs are still owed $762.65. It is this specific, identifiable sum of money that Plaintiffs allege Defendant unlawfully retained and "converted . . . to its own use." (FAC ¶ 91.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 11-10066 SJO (PJWx)</u> | **DATE:** <u>July 10, 2012</u> |

      6.      <u>Plaintiffs' Eighth Cause of Action</u>

Plaintiffs allege that Defendant received and retained money belonging to Plaintiffs which Defendant "should not be permitted to retain." (FAC ¶¶ 105-107.) Under a theory of unjust enrichment, Plaintiffs seek "disgorgement of all revenue and profits [Defendant] gained through its unlawful and excessive escrow contribution requirements." (FAC ¶ 109.) "[U]njust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin. Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Pointing to paragraph ten of Plaintiffs' FAC, wherein Plaintiffs partially recite their mortgage agreement with First Franklin, Defendant argues that "the existence of a contract regarding the impound account precludes an unjust enrichment claim." (MTD 14.)

However, Defendant was not a party to the mortgage agreement between Plaintiffs and First Franklin. Thus, Defendant cannot rely on the existence of that contract as grounds to dismiss Plaintiffs' claim of unjust enrichment. *See Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996) ("[A]n action based on a[] . . . quasi contract cannot lie where there exists **between the parties** a valid express contract covering the same subject matter" (emphasis added.))

Looking ahead to Plaintiffs' ninth cause of action, the Court notes that the FAC alleges the existence of a contract between Plaintiffs and Defendant "by virtue of Defendant's service of the [mortgage] loan as an agent or assignee of or successor of the servicing rights and duties of Plaintiffs' original lender under the mortgage contract." (FAC ¶ 111.) Plaintiffs can prevail on either their ninth cause of action for breach of contract or their eighth cause of action for unjust enrichment, but not both. *See Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, No. C-11-2576 EMC, 2011 WL 6099394, at *9 (N.D. Cal. Dec. 7, 2011) ("[P]laintiff may not . . . prevail under both unjust enrichment and breach of contract."); *see also McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004) ("[R]estitution may be awarded **in lieu** of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." (emphasis added)). Plaintiffs' claim of unjust enrichment is "internally inconsistent" with their later assertion that a valid and enforceable contract exists between them and Defendant. *See Lance*, Cal. App. 4th at 203. However, alleging unjust enrichment in the alternative would easily cure this defect. Leave to amend the FAC to perfect this cause of action is granted.

      7.      <u>Plaintiffs' Ninth and Tenth Causes of Action</u>

For their ninth and tenth causes of action, Plaintiffs plead breach of contract and breach of the implied duty of good faith and fair dealing in the alternative to their claim for tortious interference

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-10066 SJO (PJWx)</u>     DATE: <u>July 10, 2012</u>

with contract. (FAC ¶¶ 111-117.)[3] Plaintiffs contend that Defendant assumed an obligation under the mortgage contract to administer Plaintiffs' impound account in accordance with federal law, and that Defendant violated this obligation by overcharging them. (FAC ¶¶ 113-114.) Plaintiffs also contend that by demanding excess impound account contributions and failing to provide full and complete refunds, Defendant breached the implied covenant of good faith and fair dealing. (FAC ¶ 120.) Defendant contends that "[i]f Plaintiffs wish to assert claims for breach of contract or breach of the implied covenant of good faith and fair dealing, they . . . need to identify with specificity the contract at issue and state the provisions which they claim Defendant breached." (MTD Reply 5, ECF No. 20.)

To establish breach of contract, "[a] plaintiff must demonstrate a contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and damage to the plaintiff." *Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 243 (2002). Plaintiffs rely on the fifty-five page Exhibit attached to their FAC to support these two causes of action. (MTD Opp'n 15.) Plaintiffs contend that the Exhibit contains the "Deed of Trust" that recites the requirements of RESPA that Defendant violated. (MTD Opp'n 15.) However, the Court does not discern a contract between Plaintiffs and Defendant from the Exhibit. Moreover, Plaintiffs have not pointed to specific provisions in the Exhibit that Defendant allegedly violated in bad faith. Because these deficiencies are not incurable, leave to amend these causes of action is granted.

        8.    <u>Plaintiffs' Eleventh Cause of Action</u>

Plaintiffs allege that Defendant breached its fiduciary duty to Plaintiffs and the Class "by demanding excess impound account contributions." (FAC ¶ 125.) Defendant contends that this cause of action "fails because as a matter of law, there was no fiduciary relationship present" between the parties. (MTD 15.)

---

[3] Plaintiffs' ninth and tenth causes of action differ from their first and second causes of action. Plaintiffs' theory of liability in their first and second causes of action is that a valid Pooling and Servicing Agreement exists between First Franklin and Defendant to which Plaintiffs and the Class are the intended third-party beneficiaries. This theory suffers from a fatal defect which the Court articulated earlier. However, in the ninth and tenth causes of action, the theory of liability rests on an alleged assignment of contractual duty. Plaintiffs allege that they have a mortgage contract with First Franklin and that First Franklin's obligation to Plaintiffs under this agreement has been assigned to Defendant. (FAC ¶¶ 10, 110, 111.) According to the FAC, Defendant was "an agent or assignee of or successor to the servicing rights and duties of [First Franklin] under the [m]ortgage [c]ontract." (FAC ¶ 111.) Because Defendant acted "as an assignee of the servicing rights," Plaintiffs conclude that they and Defendant were in "privity of contract." (FAC ¶ 112.) The defect in Plaintiffs' theory, however, is that nothing in their FAC, or in the Exhibit attached to it, show an assignment of contractual obligation from First Franklin to Defendant.

To state a claim for breach of fiduciary duty, a plaintiff must show: "[1] the existence of a fiduciary relationship; [2] its breach; and [3] damage proximately caused by that breach.  The absence of any one of these elements is fatal to the cause of action."  *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991), *superceded by statute on other grounds*.  "The relationship between a lending institution and its borrower-client is not fiduciary in nature."  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (1991).  "A commercial lender is entitled to pursue its own economic interests in a loan transaction."  *Id.*  "This right is inconsistent with the obligations of a fiduciary[,] which require that the fiduciary knowingly agree to subordinate its interest to act on behalf of and for the benefit of another."  *Id.*

Plaintiffs' FAC does not demonstrate that Defendant knowingly agreed to subordinate its interests and to act on Plaintiffs' behalf in servicing Plaintiffs' loan with First Franklin.  Instead, Plaintiffs merely assert that Defendant "assumed a fiduciary duty with respect to . . . their impound accounts."  (FAC ¶ 124.)  Such a bald assertion is not enough to show that Defendant subordinated its interest on Plaintiffs' behalf.  Indeed, according to the agreement between Plaintiffs and First Franklin, First Franklin has the responsibility of keeping the funds in Plaintiffs' impound account and "pay[ing] the appropriate party before the due date." (FAC ¶ 10.)  Thus, even assuming *arguendo* that Plaintiffs were owed a fiduciary duty, that duty was owed by First Franklin, not Defendant.  Nothing in the FAC indicates that First Franklin owed Plaintiffs a fiduciary duty that it assigned to Defendant.  Plaintiffs fail to provide any authority to support the proposition that loan servicers like Defendant may stand in a fiduciary relationship with borrowers like Plaintiffs.  Accordingly, the FAC does not sufficiently allege the existence of a fiduciary relationship between Plaintiffs  and Defendant.  Plaintiffs claim for breach of fiduciary duty fails.  Leave to amend would be futile under these circumstances.

      B.    <u>Request for Judicial Notice</u>

Plaintiffs request judicial notice of three news articles.  (Pls.' Req. for Judicial Notice in Supp. of Mot. for Class Certification ("RJN") Exs. 1-3, ECF No. 18.)  The first two articles address the potential sale of Saxon Mortgage Services by Morgan Stanley.  (RJN Exs. 1-2.)  The third article discusses Ocwen's agreement to purchase Saxon.  (RJN Ex. 3.)

Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Court filings and other matters of public record are judicially noticeable, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006), as well as documents "whose contents are alleged in a complaint and whose authenticity no party questions. . . ."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks omitted).  Here, Plaintiffs ask the Court to take judicial notice of documents that are not public records.  Although the Court can take judicial notice of the fact that the news articles in Plaintiffs' Exhibits were published, the content of the articles is not

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 11-10066 SJO (PJWx)</u> | **DATE:** <u>July 10, 2012</u> |

judicially noticeable.  Furthermore, Plaintiffs attached their RJN to their MCC Reply, effectively denying Defendant an opportunity to dispute the authenticity of the articles.  Even if the Court were to take judicial notice of the content of these news articles, doing so would have no effect on the disposition of this matter.

      C.      Plaintiffs' Motion for Class Certification

In their FAC, Plaintiffs purport to represent a putative class that was also subject to Defendant's imposition of "excessive monthly escrow contribution."  (*See* FAC ¶ 2.)  "Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits; and (2) to protect the rights of persons who might not be able to present claims on an individual basis." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996).

Class certification is governed by Federal Rule of Civil Procedure 23.  Rule 23(a) requires the party seeking certification to demonstrate that:

> (1) [t]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Wal-Mart Stores, Inc., v. Dukes*, 564 U.S.----, 131 S. Ct. 2541, 2548 (2011) (quoting Fed. R. Civ. P. 23(a)).  In addition, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.*  Rule 23(b)(2), which Plaintiffs allege is applicable here (MCC 14-15, ECF No. 13), permits the maintenance of a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3), which Plaintiffs also allege applies here (MCC 13), permits the maintenance of a class action "if the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard."  *Dukes*, 131 S. Ct. at 2551.  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule - that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.*  "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

**CASE NO.:** CV 11-10066 SJO (PJWx)          **DATE:** July 10, 2012

160 (1982). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 161).

Plaintiffs' MCC suffers from fatal defects. Plaintiffs do not know who, if anybody, constitutes the Class, nor do they know how many persons make up the Class. Accordingly, the Court cannot determine whether numerosity would make joinder impracticable. Additionally, Plaintiffs' MCC is devoid of evidence that indicates a general policy by Defendant of overestimating impound accounts.[4] Indeed, the allegations in the FAC and evidence presented to support certification could just as well support a finding that Defendant's alleged overestimating of Plaintiffs' escrow accounts was simply an anomaly and not the result of a policy of broad applicability. Third, because Plaintiffs and the Class have different loan servicers, Plaintiffs lack standing to seek to enjoin Defendant's conduct on behalf of the Class. Given this lack of standing, to the extent Plaintiffs seek injunctive relief, their claim is atypical.

The Supreme Court could not have been more clear when it noted that plaintiffs seeking class certification cannot simply rest on the pleadings. *Id.* Plaintiffs have failed to heed that instruction. As the illustrations above show, Plaintiffs' allegations in their MCC fall short of meeting even the plausibility standard under *Twombly*, let alone the more rigorous requirement of Rule 23(a). As such, the Court need not engage in a lengthy discourse as to whether Plaintiffs satisfy the requirements of numerosity, commonality, typicality and adequacy of representation. It suffices to note that in place of substantive evidence, Plaintiffs' MCC offers blanket speculation of what Plaintiffs hope "discovery will demonstrate."[5] *(See, e.g.*, MCC 4, 6, 7, 8.) However, Plaintiffs have

---

[4] In *Dukes*, the plaintiffs' lack of evidence on the commonality question occupied the Court's attention. The Court observed that the evidentiary gap could have been filled in two ways: plaintiffs could provide evidence of a biased testing procedure which the employer used to evaluate applicants and employees, or plaintiffs could provide "significant proof that an employer acted under a general policy of discrimination." *Dukes*, 131 S. Ct. at 2553 (quoting *Falcon*, 457 U.S. at 159). Evidence that Defendant acted pursuant to a general policy of imposing excessive charges is "entirely absent" on these facts. *See id.*

[5] Plaintiffs rely on *Kamm v. California City Development Co.*, 509 F.2d 205 (9th Cir. 1975), wherein the Ninth Circuit noted that a trial court abuses its discretion to deny discovery in cases "where discovery is necessary to determine the existence of a class or set of subclasses." (*See* MCC Reply 3, ECF No. 19.) (citing *Kamm*, 509 F.2d at 210). But Plaintiffs misplace their reliance on *Kamm*. To permit discovery in connection with a class action determination falls within the sound discretion of the trial court. *See Kamm*, 509 F.2d at 209. The underlying assumption in *Kamm* is that the pleading standard has been met. This Court cannot make that assumption here because Plaintiffs have failed to nudge the class allegations in their FAC across the line from conceivable to plausible.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 11-10066 SJO (PJWx)</u> | **DATE:** <u>July 10, 2012</u> |

not given the Court any reason to think that the information they seek is discoverable, or even that they have a well-founded belief that discovery will uncover evidence supporting their claims. To permit class-wide discovery on such bare, speculative allegations would be to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *See Iqbal*, 556 U.S. at 678-79. The pretrial discovery process does not countenance such "fishing expeditions." *See Twombly*, 550 U.S. at 577.

Because the Court finds Plaintiffs' MCC deficient under Rule 23(a), class certification is inappropriate. Because Plaintiffs fail to make any non-speculative allegations that indicate the putative Class even exists, the Court denies Plaintiffs' request for class discovery. The Court need not reach the question of whether Plaintiffs satisfy any of the Rule 23(b) requirements. Accordingly, the Court DENIES Plaintiffs' MCC. Plaintiffs may proceed on their individual claims.

III.     <u>RULING</u>

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Class Certification. The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss as follows:

- (1) Plaintiffs' first cause of action for breach of contract is **DISMISSED WITHOUT LEAVE TO AMEND**;
- (2) Plaintiffs' second cause of action for breach of the implied covenant of good faith and fair dealing is **DISMISSED WITHOUT LEAVE TO AMEND**;
- (3) Plaintiffs' request for injunctive relief as to their fourth cause of action for violation of the UCL is **DISMISSED WITHOUT LEAVE TO AMEND**;
- (4) Plaintiffs' eighth cause of action for unjust enrichment is **DISMISSED WITH LEAVE TO AMEND**;
- (5). Plaintiffs' ninth cause of action for breach of contract in the alternative to tortious interference with contract is **DISMISSED WITH LEAVE TO AMEND**;
- (6) Plaintiffs' tenth cause of action for breach of the implied covenant of good faith and fair dealing in the alternative to tortious interference with contract is **DISMISSED WITH LEAVE TO AMEND**;
- (7) Plaintiffs' eleventh cause of action for breach of fiduciary duty is **DISMISSED WITHOUT LEAVE TO AMEND**; and

---

Plaintiffs' MCC does not establish who constitutes the membership of the Class, or whether what happened to Plaintiffs also happened to the Class members. Against such fundamental deficiencies, the Court cannot reach a Rule 23(a) inquiry. Where Plaintiffs fail to meet even the pleading standard, it is not an abuse of discretion to deny them discovery. The Court notes that *Twombly* was a class action lawsuit, yet the Supreme Court did not permit discovery where the complaint failed to pass the antecedent plausibility standard.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 11-10066 SJO (PJWx)</u> | **DATE:** <u>July 10, 2012</u> |

    (8)    The Court **DENIES IN PART** Defendant's MTD with respect to all other individual claims.

Plaintiffs shall file a Second Amended Complaint in accordance with this Order **on or before July 29, 2012**. Failure to do so may result in dismissal of this action for failure to prosecute.

IT IS SO ORDERED.